# SUPREME JUDICIAL COURT

## JANUARY TERM 1862, AT BOSTON.

━━━━

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. THERON METCALF, ⎪
Hon. PLINY MERRICK, ⎬ Justices.
Hon. EBENEZER R. HOAR, ⎪
Hon. REUBEN A. CHAPMAN, ⎭

---

## SUFFOLK COUNTY.

### COMMONWEALTH vs. BANK OF MUTUAL REDEMPTION.

Under Gen. Sts. c. 57, § 19, it is the duty of a bank so to conduct its business as to keep on hand an amount of specie equal to fifteen per cent. of its liability for circulation and deposits; and for a neglect or omission substantially to comply with this requisition, a bank is liable to be enjoined, on the application of the bank commissioners, from the further prosecution of its business, so far as may be needful to prevent a violation of this provision of the statute.

Under Gen. Sts. c. 57, § 63, a bank is not prohibited from borrowing of another bank money payable on demand with interest; but is prohibited from borrowing money of another bank payable at a future day certain.

Under Gen. Sts. c. 57, § 67, a bank is prohibited from buying specie or exchange of another bank and paying therefor in its own bills, with an agreement or understanding that the bills shall not be returned or put into circulation for a specified time.

If violations of Gen. Sts. c. 57, §§ 19, 63, 67 have been committed by a bank under a mistake or misapprehension of the law, and with no wilful intent to violate the same, and

it is not alleged that any other or further similar acts are threatened or intended by it, a temporary injunction which has been granted upon it may be dissolved upon payment of costs.

PETITION by the bank commissioners of the Commonwealth, alleging that the Bank of Mutual Redemption had exceeded its powers and failed to comply with certain rules, restrictions and conditions provided by law, and praying for an injunction to restrain such violations. The following are all of the charges that are now material, to wit:

That said bank hath not kept in its bank an amount of specie equal to fifteen per cent. of its liability for circulation and deposits, as required to do by Gen. Sts. c. 57, § 19. That said bank hath made contracts for the payment of money at a future day certain, contrary to § 63 of the same chapter; to wit, on the 4th of December now last past, said bank did make a contract with the President, Directors and Company of the Atlas Bank, a corporation duly established by law, having its usual place of business in said Boston, and not an institution for savings, for the payment of $40,000 in four days from that date; [here followed other similar specifications of instances.] And that said bank, on the 4th of December now last past, did issue certain notes and bills thereof, with the agreement and understanding that the same should not be put into immediate and unrestricted circulation, and should not be returned to said bank within a limited time; to wit, did issue $40,000 of the bank-bills of said Bank of Mutual Redemption to the President, Directors and Company of the Atlas Bank, a corporation duly established by law, and having its usual place of business in said Boston, with the agreement and understanding that the same should not be put into circulation, nor returned to the said Bank of Mutual Redemption, within the time of four days; contrary to the provisions of § 67 of the same chapter.

The statute provisions upon which the petition was founded are copied in the margin.*

---

* Gen. Sts. c. 57, § 19. "Every bank shall keep in the bank an amount of specie equal to fifteen per cent. of its liability for circulation and deposits; and

Upon this petition, a temporary injunction was granted, and notice issued to the defendants, who duly appeared and moved that the injunction be dissolved; and a hearing was had before the chief justice, who, upon facts in proof which are stated in the opinion, ordered the injunction to be continued, so far as it related to the first and third of the above charges, and dissolved as to the residue; and, at the request of the defendants, reserved the various questions arising for the determination of the whole court.

*B. R. Curtis & C. Cushing,* for the defendants. 1. The main question is, what is the true meaning of the provision of Gen. Sts. *c.* 57, § 19 ? Is it, to require each city bank to keep the specified amount of specie on hand constantly; or only to keep a weekly average of this amount? Section 93 requires each bank doing business in Boston, (except in South Boston,) on every Monday morning, to transmit to the secretary of the Commonwealth under oath a statement of the average amount of its specie. These two sections, though so far apart, are parts of one enactment. Originally, they constituted but a single section. *St.* 1858, *c.* 69. This enactment consists of three members: 1. Each bank is to keep fifteen per cent.; 2. To make return every Monday of the average; 3. If, upon this return, it

---

when by the returns required by sections ninety-three and ninety-four it appears that the weekly or monthly average of specie required thereby to be returned by a bank is less than that amount, such bank shall make no new loans until its specie is restored to such amount." . . . . . . .

Sec. 63. "No bank shall make or issue a note, bill, check, draft, acceptance, certificate, or contract, in any form whatever, for the payment of money at a future day certain, or with interest, except for money borrowed of the State or of an institution for savings incorporated under authority of the State, or money deposited by an assignee as provided in section forty-nine of chapter one hundred and eighteen; and except also that all debts due to one bank from another, including bills of the bank indebted, may draw interest." . . . . . .

Sec. 67. " A bank which loans or issues any of its notes or bills, with an agreement or understanding that such notes or bills shall not be put into immediate unrestricted circulation, or that they shall not be returned to the bank within a limited time, shall forfeit a sum not exceeding one half nor less than one fourth part of the amount so loaned or issued."

appears that the weekly average falls below fifteen per cent., the bank is to abstain from further discounts until the average is raised to that amount. The first member does not provide in terms that the bank shall keep this amount constantly on hand; but the reasonable interpretation is, that the amount shall be so kept on hand as explained, qualified and limited, if limitation is necessary, by the other two.

The apparent generality of the first proposition is apparent only. If the legislature had intended to require this amount to be constantly kept on hand, it would have been easy to say so. The omission is significant.

Again; no consideration of public policy shall impel us to assume that the legislature have commanded the banks to do an impossible thing; and the assumption of the petitioners involves an impossibility. It is impossible to know, as a matter of knowledge, whether the amount has fallen below fifteen per cent. A bank is engaged in business, involving transactions of domestic and foreign exchange; and a modification of balances occurs in the course of events, of which it is impossible for its officers to have actual knowledge ·as the events occur. The knowledge comes by mail, perhaps a fortnight after.

Again; independently of the means of knowledge, it may be a question of physical possibility. Assume that on an examination, upon a given day, it is found that there is on hand an amount of specie sufficient for its probable wants; but, by unexpected payment to it of debts in checks, and by unexpected deposits, which it must receive or stop business, the proportion of specie may be subject to diminution which the bank has no means of preventing, even if it has the means of knowing. The legislature have commanded it to know this weekly, and not oftener.

What did the legislature mean by "average?" The restrictive consequences are based strictly on an average. "Average" implies the summation of a succession of items. If the intent were to require this amount to be kept constantly on hand, there is no mathematical possibility of a question of average. If the legislature had meant constantly they would have

said that, if it should appear that at any time a bank had less than fifteen per cent. on hand, the prescribed consequences should follow. "Average" implies that, at some time, there shall be sums below the average. If the amount is always at one point, there is no question of average.

2. In reference to the next charge, it is submitted that it is lawful for a bank in this commonwealth to be indebted to another bank, either on time, without interest; or on time, with interest; or with interest, but not on time. *Faneuil Hall Bank* v. *Bank of Brighton*, 16 Gray, .

The true construction of Gen. Sts. *c.* 57, § 63, does not allow its application to cases of verbal contracts. The prohibition is, of making or issuing a note, bill, check, draft, acceptance, certificate, or contract. No one would imagine the act of the defendants to come within the statute, but for the use of the word "contract." But, assuming the statute to be technically drawn, there must be a logical relation between the acting verb and the thing acted upon. The word "issue" implies a thing issuable; which a verbal contract is not. The mischief to be met was, notes payable on time, with interest; post-notes, like those issued by the United States Bank in its troubles. But, give to the word "contract" all possible generality, the exception is universal, "that all debts due to one bank from another may draw interest."

3. Gen. Sts. *c.* 57, § 67, was not intended by the legislature to include any such case as is charged and proved in this proceeding; and although the general words of that section may be broad enough to include such a case, it is not within the mischief, and is not unlawful. *Commonwealth* v. *Slack*, 19 Pick. 304.

4. The general equity powers of this court do not enable it to lay an injunction to command a bank to obtain any particular amount or proportion of specie, or to refuse to pay specie when duly and lawfully demanded. It cannot do the first, because a court of equity has not jurisdiction to order such a substantial act to be done; *Lumley* v. *Wagner*, 13 Eng. Law & Eq. R. 252, 1 De Gex, Macn. & Gord. 604, and 5 De Gex & Sm. 485; nor the second, because the law requires the bank,

under a heavy penalty, to pay all its bills in specie on demand, and makes no exception of the case where such payments would reduce the amount below fifteen per cent. of the liabilities of the bank for bills and deposits. Nor does the statute give to the court any power to order the bank to obtain specie, or restrain its payment.

This is not a bill under the general equity powers of the court, but an *ex officio* information, on the ground that the bank has failed to comply with the statute. A general order has been issued that the bank shall not fail to keep on hand the specified amount of specie; that is, that it shall not under any circumstances so fail. Such an order practically prohibits it from doing any business.

But conceding, for the argument, that the statute means to require this amount to be kept constantly on hand. It is further provided that the bank shall make no new loans until the required amount of specie is made up. It is impossible that the legislature should have intended that if the specie falls below this amount in a single instance, the bank shall be liable to an injunction; and if, by reason of the number of instances in which it has fallen below, the average at the end of the week is below, it then can make no further discounts. The two are inconsistent.

It is well settled that, in construing statutes, it may be proved that the legislature have inserted something intended to be directory merely; something, a failure to comply with which shall not be attended with judicial consequences. This statute may be so interpreted.

*Foster*, A. G., for the Commonwealth. 1. The failure to keep on hand the required amount of specie was not in consequence of any special drain on the resources of the bank, or of an unusual demand for specie, but in the ordinary course of its business, as a part of the system according to which its affairs were administered; because, in the words of its president, " the object was to have as little dead capital as possible." It may be that an invariable keeping on hand of a specified amount of specie is hardly practicable; but an habitual keeping of it is practicable.

The enactment was passed in the spring of 1858, in consequence of the financial disasters which had recently overwhelmed the country, and for the purpose of requiring each incorporated bank in Massachusetts to give to the public in future a sounder currency, resting on the basis of a stronger specie reserve. All the banks in the United States, except those of New Orleans and one in New York, had become insolvent by the suspension of specie payments in the fall of 1857. The banks of New Orleans were preserved by their obedience to a statute of Louisiana, requiring them to keep gold or silver to the amount of one third of their immediate liabilities. *Rev. Sts. of Louisiana*, Banks, § 26. The same proportion had for many years been regarded by the Bank of England to be indispensable to its security.

The soundest bankers, the wisest political economists, and the most experienced legislators concurred in recommending the adoption of measures compelling each bank to hold at all times not less than a certain fixed proportion of coin to its liabilities. The adoption of the view taken by the respondents of this statute would defeat its purposes ; and its language will not admit of such a construction. The word " keep " has a definite meaning ; and to have a certain average is not the same thing as to keep a certain amount. The statute providing for a return of the weekly average was already in existence when the statute providing for the keeping of a certain amount of specie was passed. *St.* 1854, *c.* 307. The duty imposed is, to keep on hand a certain proportion of coin. The weekly or monthly return enables the public to judge whether this duty has been performed.

It is objected that the legislature did not use the word " constantly." If that word had been used, it would have furnished ground for an argument of physical impossibility. As the statute now stands, it means that every bank shall so arrange its business as habitually to have on hand this amount, and promptly to supply any deficiency.

The injunction is authorized by Gen. Sts. *c.* 57, § 7. The prohibition against loans until the amount of specie is restored to

fifteen per cent. is an additional restriction, but does not exempt a bank from the jurisdiction of the court. In the present case, the equitable interposition of the court is sought, 1st, to explain the law; and 2dly, to enforce the explanation.

2. Authority to borrow money is not one of the powers of banks enumerated in the statute. Gen. Sts. *c.* 57, § 15. It is not one of the implied powers. Borrowing is never sound banking. " Banks are properly lenders of capital, and not borrowers; and it is not one of their legitimate functions to disturb the natural current of trade by borrowing at one price to lend at another."

The Gen. Sts. *c.* 57, § 63, were not intended to grant this power, but only to permit contracts for the payment of interest on such debts as exist and naturally arise in the course of business, from collections, drafts, bills and redemption agencies. See *Sts.* 1828, *c.* 97, § 2; 1834, *c.* 203, § 1; Rev. Sts. *c.* 36, §§ 56, 57, and Comm'rs' Rep. on same; *St.* 1836, *c.* 255.

3. The injunction should be continued against violations of Gen. Sts. *c.* 57, § 67.

BIGELOW, C. J. The authority of this court to issue an injunction against a bank on the application of the bank commissioners, and to make such injunction perpetual, as set forth in Gen. Sts. *c.* 57, § 7, is very broad and comprehensive. It is not limited to cases where the corporation is insolvent, or its further continuance in business will be hazardous to its creditors, but extends to all cases where a bank has exceeded the powers conferred on it, or has failed to comply with any of the rules, restrictions or conditions provided by law for its regulation and management. Nor is the nature of the injunction which the court is empowered to issue in such cases defined or limited by any legislative restriction. This is left to be determined by a sound judicial discretion. It may be absolute, and restrain a corporation from the exercise of all its powers; or it may be partial, prohibiting only such acts as may be hazardous and unlawful. And, upon a hearing of the corporation, the preliminary injunction may be dissolved, modified or made perpetual, or the court may pass such orders and decrees to suspend,

restrain or prohibit the further prosecution of the business of the corporation as may be needful to insure the safety of the public or the creditors of the bank against loss, or to compel the corporation to keep within the sphere of its legitimate functions and duties, and to comply with the various provisions of law enacted for the due management of its business. The object of conferring this very extensive jurisdiction in equity over this class of corporations is obvious. The nature of the important powers and duties with which they are intrusted renders it expedient and necessary that they should be subjected to a careful supervision, and that any irregularity or illegality in their mode of conducting business should be promptly checked and prevented.

The allegations in the information before us, on which the bank commissioners now seek to restrain the actions of the defendants, are three. The first and most prominent one is, that the officers of the corporation have violated the provision of Gen. Sts. *c.* 57, § 19, in failing to keep in the bank an amount of specie equal to fifteen per cent. of its liability for circulation and deposits. This allegation is supported by proof that from October 8 to November 16, 1861, on seven different days, the specie in the bank fell below the required amount of fifteen per cent., so that on those days the amount varied from about four per cent. to a little over thirteen per cent. ; on one day falling as low as four, and on another day only to about thirteen per cent. of the liability for circulation and deposits. It is contended on the part of the defendants that this proof of the allegations contained in the information shows no infraction of the law ; that the statute does not require the corporation to keep on hand a daily or constant reserve of specie of any specified amount ; that the requisitions of the statute are fully complied with if it appears that the bank has had a weekly average of specie equivalent to fifteen per cent. of the amount of its liability for circulation and deposits ; that it is wholly immaterial to inquire whether on any specific day or days in the course of a week the specie in the bank has fallen below the given standard, if it is shown by the weekly returns, which the bank is required to

make in pursuance of the provisions contained in Gen. Sts. *c.* 57, §§ 93, 94, that the average of specie on hand during the previous week has been equal to the percentage required by law. It is on this view of the meaning of the statute that the defendants rest their defence to the first allegation in the information. They do not contend that their omission to have on hand the amount of specie designated in the statute has been the result of accidental circumstances, or has arisen from any unforeseen exigency or unexpected demand on the resources of the bank. On the contrary, they insist that it is the legitimate result of a mode of conducting their business which does not in any respect contravene the statute regulating the specie reserve of the bank.

From this statement of the question at issue between the parties under the first allegation in the information it is manifest, that the difference between the construction put on the statute by the defendants, and that on which the commissioners rely, is wide and essential. It is a difference which does not touch merely the form of doing business, or the mode in which a specific result is to be attained; but it goes directly to the substantial principle on which the affairs of a bank are to be administered. If the interpretation for which the defendants contend is correct, then it would seem to follow that the banks of this commonwealth, instead of managing their business in such a way as to render it practicable and certain that they will keep from day to day in their possession and control a specific amount of specie, which shall not fall below a certain definite proportion of their liabilities, and with which they shall be ready at all times to respond to the claims of their creditors, may continue their loans and discounts and enlarge their circulation even to the extreme limits allowed by law, without reference to the amount of specie kept by them, if they are able to make it appear, by borrowing specie for the purpose, or by a temporary purchase of it, or in any other way, that their specie average for the week previously, if the bank is situated in Boston, or if elsewhere, then for the month previously to the making of their weekly or monthly returns, has been equal to the sums which the statute requires them to keep.

What then is the true interpretation of this clause of the stat-
ute ? If the words are to have their literal signification, and
are to be construed by themselves as containing a separate and
distinct mandate without reference to the subsequent provision
in the same section, there is no room for doubt as to their true
intent and meaning. " Every bank shall keep in the bank an
amount of specie equal to fifteen per cent. of its liability for cir-
culation and deposits." This is a plain and unequivocal requi-
sition. Unless modified by the clause which follows, it imposes
the duty on every bank of having on hand in its banking-house
the prescribed amount of specie. The word "keep," in the con-
nection in which it stands with the residue of the sentence, can
have no other interpretation than that given by lexicographers.
It means to hold, retain, reserve, or have in possession and con-
trol. Indeed, the defendants, in the very able and ingenious ar-
gument which has been presented through their counsel, do not
deny that such would be the true construction of this provision
if it stood by itself, with nothing to modify or restrict its mean-
ing. But they urge, with great force and plausibility, that it is
to be construed in connection with the clause which follows it,
by which it is provided that when it appears by the weekly or
monthly returns which banks are required to make to the secre-
tary of the Commonwealth, that " the weekly or monthly aver-
age of specie required thereby to be returned by a bank is less
than that amount, such bank shall make no new loans until its
specie is restored to such amount." The argument is, that this
clause by implication recognizes the right of a bank so to con-
duct its business as to reduce its specie below the designated
percentage, because a weekly or monthly average of specie to a
certain amount necessarily presupposes that at some time during
the week or month it must have fallen below the given standard.
But we cannot think that any just canon of interpretation will
warrant us in construing this clause as intended to modify and
essentially change the previous clearly expressed requisition of
the statute. It is difficult to believe that the legislature would
have enacted an explicit and unambiguous mandate by which
banks were required to keep a specific amount of specie on hand,

if they intended only to require that by their weekly or monthly returns there should appear to be a certain average of specie in each bank. The requisitions are certainly essentially different from each other. If the latter was in contemplation by the framers of the statute, it would have been easy to express it in direct and unmistakable terms, without resorting to an obscure circumlocution, which leaves their meaning in great doubt and uncertainty. But it seems to us that this latter provision was inserted with no design to alter the previously declared rule regulating the specie reserve. It had a different object. It placed a direct prohibition on the officers of the bank, restraining them from making loans and discounts until the deficiency of specie was made up. Its purpose was to provide a means by which to enforce the rule of keeping the specie up to the prescribed limit; not to modify or alter it. Such a provision was the more necessary, because the actual condition of the bank as to specie might not be known to directors, by whom loans or discounts are usually made, unless it was required of them to ascertain it, by examining the returns of their president or cashier, before extending the liability of the bank by additional loans. But all doubt concerning the meaning of this clause is put at rest by a consideration of the extent of the prohibition restraining discounts. It is not limited to a time when the bank is in such condition that its weekly or monthly average of specie will reach to the requisite amount. This would be the limit, if only an average of specie was required. But it extends until " the amount of specie shall be restored to the proportion of fifteen per centum of its aggregate liability for circulation and deposits." This is the express language of *St.* 1858, *c.* 69, § 1, from which the provision in Gen. Sts. *c.* 57, § 19 is taken. This clearly shows that the normal and legal condition of a bank, which the statute was designed to secure and preserve, and to which it is to be restored in case of deficiency, is, that it shall have on hand a reserve of specie equal to the amount designated in the statute.

Nor are we able to see that any other construction of the language of the statute would carry out the object which the

legislature intended to accomplish by these provisions. The title of the original statute is, " An act to increase the amount of specie in the Commonwealth." This purpose could be effected only by adopting some measure which should compel banking corporations to hold in their possession and control a constant specie reserve, and thus to carry into practical operation the theory of a financial system based on specie, and a currency redeemable at all times in coin. It certainly is difficult to see how the intention of the legislature, as declared in the title of the act, could be promoted by requiring of banks only the appearance or show of a weekly or monthly average of specie. If such is the true construction of the statute, a bank may conduct its business without keeping on hand any definite amount of specie in proportion to its liabilities. Its transactions may rest almost exclusively in paper. It may own or possess but a very small sum in coin. It can comply with the statute by having on· hand for a single day in a week or month sufficient coin to make up the required average in its returns ; and this amount may be procured for the purpose by borrowing or a temporary purchase, to be restored or resold as soon as the return is made, instead of being kept as the property of the bank, and forming a part of the specie basis, on which the banking system of the Commonwealth is intended to be founded. If the language of the statute were more ambiguous than it really is, we should be slow to give such a construction to it as would lead to a result so much at variance with the manifest design of the framers of the act.

It is urged in behalf of the defendants that, as the business of a bank, however cautiously and prudently conducted, is of a nature to expose it to unusual and unexpected demands for specie, either to redeem its circulation or to answer the calls of depositors for coin, and as a sudden and large increase of deposits may, at any time, cause the specie kept in reserve to fall below the required percentage, a literal compliance with the requisition to keep on hand fifteen per cent. of its liabilities would be impracticable. 'Doubtless there may be cases where an emergency may arise, which could not have been anticipated.

by which a reduction in the amount of specie below the given standard might temporarily occur. But such deficiency, if promptly supplied, would not be deemed an infraction of the statute, if it was made to appear that it was the result of accidental circumstances, and that the business of the bank was so managed as in the ordinary course of its operations to keep in its vaults the required amount of specie. This would be a substantial compliance with the requirement of the statute. Nor are we able to see why a bank may not conduct its affairs in such manner as to have in its possession a specified amount of specie, as well as to maintain a prescribed average. An unusual demand might reduce this average in like manner as the same cause would operate to diminish a certain percentage below the required amount. The argument applies with equal force to either view of the statute, and as an argument *ab inconvenienti* is not entitled to much weight.

These views of the construction to be given to the statute have led us to the conclusion, that it imposes on a bank the obligation of keeping on hand a sufficient amount of specie for the ordinary demands of its daily business, and also a reserve of fifteen per cent. on its liabilities for circulation and deposits, after meeting and discharging those which are presented for liquidation and payment. As the defendants do not show that their omission to have this amount of specie in their keeping, on the days when it is shown to have fallen below the given standard, was the result of any unexpected demand on them by their creditors, but, on the contrary, that it was caused by a course of business conducted with a view to keep only a weekly average of specie to the amount designated in the statute, it follows that they have violated the statute; and on this point the allegations in the information are sustained.

The remaining allegations in the information, which are now insisted on, may be briefly disposed of. The right of a bank to borrow money from another bank is nowhere expressly prohibited. On the contrary, the right to do so would seem to be recognized in Gen. Sts. *c.* 57, § 26, by which it is expressly provided that debts due from one bank to another, including bills of the

bank indebted, shall not be considered as within the prohibition of § 25, which limits the indebtedness of a bank to twice the amount of its capital stock, exclusive of sums due for deposits not bearing interest. The only restraint on the power to contract such a debt is contained in § 63 of the same chapter, which provides that no bank shall make any contract for the payment of money at a future day certain, or with interest. This language is certainly broad enough to cover a contract by one bank with another to pay money at a future day. That it was intended to include such contracts is strongly implied from the exception to the prohibition, by which it is provided that " all debts due to one bank from another may draw interest." The conclusion would seem to be inevitable that the legislature, in making this provision, had in view debts due from one bank to another, and intended to bring them within that part of the section which prohibits them from being made payable on time, but to exempt them from the prohibition of drawing interest. We can see no sufficient reason for limiting this exception to any particular class of debts existing between banks. It is applicable to every species of indebtment which may lawfully be due from one bank to another. It was suggested by the counsel for the defendants that in *Faneuil Hall Bank* v. *Bank of Brighton*, 16 Gray,    , this court had given such construction to this provision of the law as to authorize a bank to borrow money from another bank payable at a future day. But this is a misapprehension. No question arose in that case as to the right or power of one bank to borrow money from another bank. The point there decided was, that a draft drawn by one bank on another, payable at a future day, was not on its face unlawful, because there might be transactions between banks, creating balances due from one to another, which might well authorize the making of drafts on time. But there was nothing in that case which tends to sanction the creation of a debt by the borrowing of money by one bank of another payable at a future day. So far, therefore, as the defendants entered into contracts by which they borrowed money of another bank payable at a fixed time, they violated the law; but beyond this the allegation

in the information, setting forth that they borrowed money of other banks payable with interest, in violation of the statute, is not sustained.

The only remaining ground on which it is claimed that the defendants have acted contrary to any of the requirements of the statute, is, that they have delivered their bills to other banks for specie lent, with an agreement that they should not be returned for redemption until after the expiration of a certain number of days. This transaction was in direct contravention of the express provisions contained in Gen. Sts. *c.* 57, § 67, which impose a penalty on any bank " which loans or issues any of its notes or bills with an agreement or understanding that they shall not be put into immediate unrestricted circulation, or that they shall not be returned to the bank within a limited time." On language so clear and explicit we cannot engraft exceptions derived from the supposed causes which originally gave rise to the enactment.

In considering the decree which ought to be passed in the case, it has seemed to us that, as the acts of the defendants, so far as they were contrary to law, were done under a mistake or misapprehension of the provisions of the statutes, and with no intent to commit a wilful violation of the enactments for the regulation of banks; and as no other or further similar acts are threatened or intended by the defendants, the further prosecution of this suit is not required in furtherance of justice, or to enforce a due observance of the laws. We therefore are of opinion that, on payment of costs by the defendants, the injunction heretofore granted should be dissolved, and further proceedings in the case discontinued. *Decree accordingly.*